JOHN M. RUDEY et al., Individually and as Shareholders in 1030 FIFTH AVENUE CORPORATION, Appellants, v LANDMARKS PRESERVATION COMMISSION OF THE CITY OF NEW YORK et al., Respondents, et al., Respondent.

First Department, May 26, 1988

## APPEARANCES OF COUNSEL

*James G. Greilsheimer* of counsel *(Paul E. Breene, Robert S. Davis* and *Diane Penneys Edelman* with him on the brief;

*Stroock & Stroock & Lavan* and *Berle, Kass & Case,* attorneys), for appellants.

*Fay S. Ng* of counsel *(Pamela Seider Dolgow* and *Robin Binder* with her on the brief; *Peter L. Zimroth, Corporation Counsel,* attorney), for Landmarks Preservation Commission of the City of New York and another, respondents.

*John P. Rooney* for 1030 Fifth Avenue Corporation, respondent.

## OPINION OF THE COURT

MILONAS, J.

Petitioners herein are shareholder-tenants of respondent 1030 Fifth Avenue Corporation and hold a proprietary lease on apartment 5W of the subject building, which is located across the street from the Metropolitan Museum of Art. In 1979, petitioners, contemplating renovation of their apartment, including replacement of the original multipaned, double-hung wood windows with single-paned aluminum windows, commissioned an architect to undertake the project and obtain the necessary permits. Thereafter, the cooperative corporation's managing agent, acting on behalf of the corporation and its Board of Directors, authorized petitioners to proceed with the proposed alterations, and the work was completed by October of 1980. It should be noted that the corporation had the preceding year given permission to the shareholder-tenants of apartment 14W to install windows almost identical to those selected by petitioners. In addition, the original windows in a twelfth-floor apartment had been previously replaced.

On September 23, 1981, respondent Landmarks Preservation Commission issued a notice of violation, No. V-761, advising that windows had recently been installed at the premises in violation of chapter 8-A of the Administrative Code of the City of New York, which provides that no work may be performed in historic districts designated as such by the Commission without first obtaining therefor a certificate of appropriateness or a permit for minor work. The notice did not indicate whether it related to the apartment on the fifth or the fourteenth floor, or both, and was addressed directly to the managing agent. Moreover, it incorrectly set forth the historic designation date as being September 20, 1981 when, in fact, the building had been designated as part of the Metropolitan Museum Historic District on September 20,

1977. According to petitioners, they were assured by the cooperative corporation's managing agent that because their windows had been installed in 1980, and were, thus, "grandfathered", their apartment could not be the subject of a violation. Petitioners further allege that they did not discover until the fall of 1985 that the building was in a historic district and that none of their architects or consultants, despite a search having been undertaken of the files of the New York County Clerk's office and the New York City Department of Buildings, were aware of any restrictions on the property. The Landmarks Preservation Commission, however, states that representatives of all the buildings located within the area had received notice of a public hearing conducted prior to its designation as a historic district in 1977 and were subsequently informed of the Commission's final action. Notwithstanding petitioners' claim that their architect was unable to find a record of the designation in the County Clerk's office or with the Department of Buildings, the Commission insists that the required notification was provided.

Petitioners, apparently based upon the managing agent's mistaken advice, ignored the 1981 notice of violation, and, in March of 1982, they carried out some "minor" repair work to an interior hinging mechanism on two of the windows. The result was another notice of violation, No. V-1003, dated March 25, 1982, which was directed to the cooperative corporation. The notice neither referred to the prior notice of violation nor did it correct the erroneous designation date specified therein. Therefore, management again counseled petitioners not to worry about their renovations but, since the new notice expressly mentioned the fifth-floor apartment, did agree to raise the matter with the Landmarks Preservation Commission in an attempt to have the violations removed. Although it is unclear what transpired next, it seems that the situation remained unchanged until October 17, 1985, some five years following the installation of petitioners' windows. At that time, the Commission rejected an application for work to be performed on yet another apartment in the building until the outstanding violations were discharged. It now became evident that because the violations impacted negatively upon other shareholder-tenants, something would have to be done to alleviate the problem. The cooperative corporation, consequently, finally determined to effectuate a settlement with the Commission.

There then ensued a series of negotiations between the

Landmarks Preservation Commission and the cooperative's Board of Directors, during which the building failed in its initial effort to obtain an exemption for the existing replacement windows on the ground of good-faith reliance upon the Commission's erroneous designation date. The Board thereafter submitted applications with respect to the restoration of the windows in each of the apartments in question. While the corporation had first urged that petitioners be permitted to replace the windows within five years of the sale of the apartment, it now agreed to ensure that the windows in petitioners' apartment would be restored to a condition duplicating their original state. When petitioners learned of the proposal, and the great expense involved, they were disturbed, particularly in view of the differential in treatment between the three affected apartments. In that regard, it appears that while the Commission demanded immediate restoration of the fifth-floor windows, it was willing to wait for the fourteenth-floor windows to be replaced at the next sale and only insisted that some, not all, of the twelfth-floor windows be restored at once. Petitioners requested in writing that the Commission make the same provision for them as that being allowed to the fourteenth-floor tenant-shareholder and offered to put in a temporary grid which would render the windows similar in configuration to the way they were originally. Moreover, petitioners, appearing by their attorney at a public hearing held on March 25, 1986 in connection with the matter, opposed the cooperative corporation's plans for the fifth-floor windows.

At executive sessions on March 25th and April 15th, the Landmarks Preservation Commission considered and rejected petitioners' application to have a muntin grid placed on their windows or have the windows treated in the same manner as those in the fourteenth-floor apartment. The cooperative corporation's proposal, however, the terms of which were evidently dictated by the Commission, was accepted on April 15, 1986. On May 16, 1986, the Commission issued a formal notice of approval. Meanwhile, also at the behest of the Commission, the cooperative corporation and the shareholder-tenants of the fifth-, twelfth- and fourteenth-floor apartments entered into an escrow agreement, dated April 30, 1986. It seems that the Commission compelled the execution of this agreement by threatening to withhold approval of any further construction in the building if the corporation did not accede. Pursuant to the escrow agreement, petitioners committed themselves to

complete all restoration work within 275 days. On June 9, 1986, petitioners posted a bond in the amount of $50,000 to satisfy their obligation under the escrow agreement.

Petitioners commenced the instant proceeding pursuant to CPLR article 78 on August 14, 1986. In granting the cross motion to dismiss by respondents Landmarks Preservation Commission and its Chairman, Gene A. Norman, the Supreme Court held that petitioners were precluded from disputing respondents' determination since "the act which has caused petitioners the hardship complained of was the decision of the Cooperative Corporation's Board of Directors, dated February 25, 1986", whereas the Commission's decision of April 15, 1986 merely accepted a proposal which had been submitted by the Board of Directors and, further, that petitioners had waived any right to attack the action of the Commission by virtue of their signing an escrow agreement with the cooperative and failing to reserve in writing their right to challenge its contents. However, the municipal respondents' cross motion asserted different grounds than those relied upon by the Supreme Court although one of their arguments—that petitioners, as shareholders of the corporation, lack the capacity to bring this petition, which must properly be instituted by the corporation itself—is related to the court's finding that petitioners' real grievance is against the cooperative rather than the Commission. Respondents also claim that dismissal is mandated since the proceeding is time barred.

■ Respondents urge that the proceeding is time barred because it was not brought within four months of the issuance of the notice of violation, V-1003, in March of 1982. Yet, petitioners are not challenging the notice of violation, which took no definitive action adverse to their interest, but the Commission's ruling of April 15, 1986, which was not reduced to writing until May 16, 1986 and not served upon petitioners until the following month. The decision of April 15, 1986 rejected petitioners' application for relief and accepted the proposal of the cooperative corporation. This was the first and only final and binding determination directly affecting petitioners' rights. As the Court of Appeals declared in *Matter of Edmead v McGuire* (67 NY2d 714, 716) "[a] challenged determination is final and binding when it 'has its impact' upon the petitioner who is thereby aggrieved" *(see also, Mundy v Nassau County Civ. Serv. Commn.,* 44 NY2d 352). Since the four-month limitation period did not begin to run until such time as petitioners were notified of the Commission's decision that

they were required to undertake restoration of their windows, which it is undisputed occurred in June of 1986, the proceeding, having been commenced on August 14, 1986, is not untimely *(Matter of Edmead v McGuire, supra; see also, Mundy v Nassau County Civ. Serv. Commn., supra).*

■ Respondents' contention that petitioners lack the capacity to maintain this proceeding in that any wrong, if one was indeed committed, was against the corporation and not the individual shareholders is equally meritless. While the cooperative did derive some benefit from the Commission's determination, as the Commission would now be willing to entertain renovation applications from tenant-shareholders, the fact remains that the real effect of its ruling was upon those shareholders who, like petitioners herein, would be compelled to restore their windows at considerable personal expense. Nor is it true, as the Supreme Court concluded, that petitioners' complaint is actually against the corporation rather than the Commission. The cooperative corporation has never endeavored on its own initiative to force the shareholders to replace windows; it merely responded to pressure from the Landmarks Preservation Commission by attempting to arrange a settlement of the dispute, and even the details of the ultimate solution seem to have been devised by the Commission. In reality, the corporation appears to have had little room in which to maneuver.

The law is well established that where a wrongdoer has breached an obligation to a shareholder which is independent of any duty owing to the corporation, the shareholder has an individual cause of action *(Abrams v Donati,* 66 NY2d 951, 953; *see also, Fifty States Mgt. Corp. v Niagara Permanent Sav. & Loan Assn.,* 58 AD2d 177, 179). Petitioners are clearly not challenging a determination touching upon a common area of the building; instead, the Commission's decision impacts upon their own private living quarters. While, technically, petitioners own shares in the corporation and not the apartment in which they live, they, not the cooperative, would be required to finance the restoration, and they, not the cooperative, would have to endure the inconvenience and aesthetics involved in replacing the windows. Accordingly, petitioners' interest in the matter "is not abstract but personal, real, direct and substantial" *(see, Matter of Whalen v Lefkowitz,* 36 NY2d 75, 78). Certainly, it would be anomalous, if not unjust, to render an individual's capacity to maintain an action in a situation such as the present one entirely

dependent upon the fortuitous circumstance of whether the aggrieved person resides in a cooperative or condominium, notwithstanding that the alleged injury would be identical in each instance.

■ As for whether petitioners' execution of the escrow agreement constituted a waiver of their right to resort to litigation, this question seems to have become an issue primarily because of the Supreme Court's disposition herein. The subject of waiver was not raised by the municipal respondents in their cross motion to dismiss and was, therefore, neither discussed nor briefed by the parties in connection with the original motion. Significantly, the court may not have been aware of all the facts surrounding petitioners' signing of the escrow agreement, and, indeed, an examination of the record of this proceeding casts serious doubt upon whether petitioners knowingly and intentionally waived their right to pursue judicial remedies. In any event, this matter warrants further consideration by the trial court. Finally, when the petition and cross motion originally came before the Supreme Court, not only had certain facts relating to the escrow agreement not been submitted since waiver was not then at issue, but the minutes of the Landmarks Preservation Commission's public hearing of March 25, 1986 and executive sessions of March 25 and April 15, 1986 had not yet been transcribed. These minutes are important to an understanding of the Commission's determination. Consequently, the motion to renew should have been granted and, upon renewal, the cross motion to dismiss denied for the reasons indicated herein.

Appeal from the judgment of the Supreme Court, New York County (Amos E. Bowman, J.), dated November 21, 1986 and entered on or about February 5, 1987, which granted respondents' cross motion and dismissed the petition in its entirety, should be dismissed as superseded by the appeal from the order entered on September 10, 1987, without costs or disbursements.

Order of Supreme Court, New York County (Amos E. Bowman, J.), entered on September 10, 1987, which denominated petitioners' motion for renewal as one seeking reargument and denied the motion, should be reversed, on the law, the motion for renewal granted and, upon renewal, the judgment dated November 21, 1986 and entered on or about February 5, 1987 vacated, the cross motion denied and the matter remanded for further proceedings, without costs or disbursements.

SANDLER, J. P., ASCH, ROSENBERGER and SMITH, JJ., concur.

Order, Supreme Court, New York County, entered on September 10, 1987, unanimously reversed, on the law, the motion for renewal granted and, upon renewal, the judgment dated November 21, 1986 and entered on or about February 5, 1987 vacated, the cross motion denied and the matter remanded for further proceedings, without costs and without disbursements. The appeal from the judgment of said court entered on or about February 5, 1987 is unanimously dismissed as having been superseded by the appeal from the aforesaid order, without costs and without disbursements.